## WILSON v. HARTFORD LIVESTOCK INS. CO.

No. 13583.

United States Court of Appeals
Fifth Circuit.

Jan. 31, 1952.

Ralph B. Shank, Dallas, Tex., for appellant.

Clarence G. Myers, Chicago, Ill., R. F. Snakard, Fort Worth, Tex., for appellee.

Before HOLMES, RUSSELL, and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

Appellant here complains of the action of the trial Court in directing, upon motion of the appellee at the conclusion of all of the evidence, the jury to return a verdict for the defendant and thereafter entering judgment upon such a verdict. In the suit appellant sought to recover the sum of $20,000 claimed to be due upon a policy of insurance in this amount issued to him by the defendant and covering the death of his male runner, Floral, by voluntary destruction, during the term of the insurance contract.

The contract involved was a mortality policy of insurance which, for a premium of $1200, insured the plaintiff, Sam E. Wilson, Jr., from the 28th day of October, 1948 to the 28th day of October, 1949 for an amount not exceeding $20,000 covering the animal Floral by Alsab out of Black Orchid. The material provisions of the coverage of the policy are set forth in the margin.[1] The provision immediately involved is that which establishes the written consent of the company as one of the two circumstances "only" in which coverage of the policy will be extended to cover loss caused by the voluntary destruction of the animal described. Plaintiff's suit was predicated upon the contention, as is likewise urged here, that the provisions of the policy raised an implied obligation on the part of the insurance company, when requested by the insured to consent to the voluntary destruction of the animal Floral for humane consideration, "to act reasonably, and not unreasonably and arbitrarily in determining whether to consent to such destruction." In its answer the defendant denied that its action in refusing to give its consent for the voluntary destruction of the animal was in disregard of the policy and likewise denied that it was necessary for humane consideration to destroy the horse Floral, and alleged that its refusal was "based on its own judgment and in full accordance with the terms, conditions and provisions of the said policy of insurance." For further defense, defendant asserted the provision of the policy containing an expressed exemption of liability for any loss resulting from depreciation in value caused by the animal insured becoming unsatisfactory for, or incapable of, fulfilling the functions or duties for which it is kept, employed or intended. Defendant likewise asserted as a separate defense a provision of the policy exempting the company from liability for death caused by voluntary destruction except under circumstances of similar purpose and

1. "Schedule of Amount of Insurance and Description of Animals Amount Insured $20,000.00 Name of Animal Floral Sex Male Runner Age 1 yr. Color Brown; Sire Alsab; Dam Black Orchid. Extent of Coverage Against Loss resulting only from death occurring within the term of of this policy of any or all of the animals insured hereunder, but only when such death is caused directly by disease, accidental injury, fire or lightning, whenever they may be within the boundaries of the United States or Canada, including while in transit by rail, ferry transport, or by properly equipped motor truck, especially constructed for transporting horses except as herein otherwise provided, limited and excepted.

"The coverage granted hereby is hereby extended to cover loss caused by the voluntary destruction, within the term of this policy, of the animals described herein when destroyed for humane consideration under two circumstances only, to wit:

"(1) Where this company shall consent to such destruction in writing signed by its general agent at its office at Chicago, Illinois, or

"(2) Where such animal or animals are injured and destroyed on a public highway or public race course during a racing meeting or at any other public event, gathering or place during a public gathering, but only where such destruction occurs within six hours after such injury is received and then only providing a certificate from a licensed veterinarian, certifying that the destruction of such animal was immediately necessary because of its having been accidentally crippled or maimed, shall have been obtained prior to the destruction of such animal or animals."

effect as those set forth in the extended coverage.[2]

In its argument here, appellee directs our attention to another provision of the policy by which the assured agreed in case of "sickness of, and/or injury to" the horse to secure the services of a licensed veterinarian and to use every possible means to save the life of the animal.

From the evidence it appears that the horse Floral participated in a race at Hawthorne Race Track, Stickney, Illinois, on September 10th, 1949. He was examined by Dr. Kent, a veterinarian employed by the Illinois Racing Board, prior to the running of the race and was found to be "fit for racing." At the completion of the race Floral pulled up lame. Subsequent examinations of Floral, together with study of x-ray pictures of the injured member, disclosed that he was suffering a lineal fracture of the left front coffin bone, known also as the os pedis bone, which is the most distal bone in the leg and is encased by the hoof.

The insurance company, appellee, was notified of the injury either on September 12th, or on September 15th, by Dr. Kent, who had examined Floral after the race on September 10th, and on September 12th. Timmons, one of appellee's managers, in response to this notice, caused Dr. Hewitt to x-ray Floral on September 15th and Dr. Cameron, a veterinarian, to examine Floral on September 16th.

On September 24th, at a meeting arranged by Engler, appellant's insurance broker, representatives of appellant conferred with Timmons at his office and at that time requested consent to destroy Floral because "the horse had been suffering with severe pain." Timmons did not grant the request, but asked Engler to furnish him with veterinarian reports and x-ray pictures. After the conference and on September 27th, Timmons and Dr. Cameron visited Floral, at which time Dr. Cameron again examined the horse. On the same day appellee had Dr. Dyxter examine Floral.

Engler, in response to Timmons' request, forwarded to him four statements of veterinarians and x-ray pictures enclosed with a cover letter, dated September 29th, in which it was again requested that consent be granted for Floral's destruction. The four statements are not in evidence, nor their content shown, and the record does not disclose the names of the veterinarians. Timmons replied to this letter on September 30th and advised Engler that the request was denied. Floral was thereafter, on October 8th, moved from Illinois to Nicholasville, Kentucky.

On October 17th, Timmons forwarded to Engler a "sick report" to be completed and returned. Apparently in response to this letter Timmons was contacted by appellant's attorney on October 21st. The details of the conversation which transpired are not recorded, but in response to the conversation the attorney wrote a letter to Timmons, dated October 21st, advising him that Floral was located at Brownwood Farm, Nicholasville, Kentucky.

Appellant, who had been sick when the injury occurred, first learned of the transactions on October 16th. At that time, he directed that Dr. Proctor be asked to examine Floral. Dr. Proctor examined the horse on October 17th and recommended that it be destroyed. On October 22nd, Dr. Proctor was again called at appellant's request and on that date painlessly

2. "This company shall not be liable for the death of any animal caused by the voluntary destruction of such animal or animals for any reason or purpose whatsoever, unless such destruction shall have occurred within six hours after such animal or animals are injured, and then only where such animal or animals were injured and destroyed on a public highway or a public race course, during a racing meeting, or at any other public event, gathering or place, during a public gathering, and a certificate from a licensed veterinarian, certifying that the destruction of such animal was immediately necessary because of its having been accidentally crippled or maimed, shall have been obtained prior to the destruction of such animal or animals, or where this company shall consent in writing to such destruction, signed by its general agent at its office at Chicago, Illinois."

destroyed Floral in the presence of four witnesses, two of whom were veterinarians. After destroying the animal, Dr. Proctor removed the injured member and prepared it for exhibit. He notified the appellee by telegram that Floral had been destroyed "for humane consideration because [of] incurable injury."

Appellant addressed a letter to appellee dated November 10, 1949, claiming the proceeds of the insurance policy, notwithstanding appellee's refusal to consent to the destruction of Floral. Supporting affidavits signed by appellant and Dr. Proctor stated that Floral was destroyed for humane consideration because of an incurable injury. This claim was denied by appellee on November 25, 1949. Suit was thereafter instituted.

Both Dr. Kent and Dr. Proctor testified at the trial as witnesses for appellant. They were in agreement that Floral was suffering pain at the times they examined him and would never have been able to walk without pain. Dr. Kent testified the injury was healing, and Dr. Proctor stated that the healing was remarkable, but that it was a bad form of healing. Dr. Proctor also testified that at the time he destroyed Floral the animal was in "good flesh" and was eating all his feed, which is not normal for a sick horse, or one that was suffering great pain. Both doctors agreed that the horse should have been destroyed for humane consideration. Kent had given a certificate to this effect on September 26th.

Timmons testified that he saw Floral on September 27th, at which time the horse was "almost entirely free of any limp" and was in "excellent flesh." Howard Martin, a truck driver, testified that he transported Floral from the race track to Kentucky in a van with five other horses, leaving the track on October 8th. He saw Floral loaded on the van, jumped off the van and trotted "down the road" about 1000 yards when a fire broke out in the engine of the truck, and at that time Floral was not lame and there was no swelling in any part of his legs.

Dr. Cameron, who had examined Floral on September 16th and September 27th, testified that the horse was in pain on September 16th, but was considerably improved on September 27th, although he was still sore. He thought the destruction of the horse on October 22nd was an unusual act, considering his examinations and the degree of healing that had taken place since the date of the injury. In his opinion the injury would have healed and the horse "could walk and go along and live a normal life."

Appellant strenuously relies upon the construction and application of the legal effect of the extended coverage provision of the policy as set forth above, contending that if this not be true the extended coverage clause is illusory, and that if subdivision 1 of the extended coverage clause of the policy does not obligate the insurer to act reasonably and with fairness in determining whether or not it shall consent to the destruction of the insured animal, then the contract lacks mutuality and such a construction should not be adopted by the Court. Other reasons are advanced why the extended coverage provision of the contract should not be construed to give the appellee the right to arbitrarily refuse to give its consent. Appellant further contends that it was for the jury to determine (1) whether the horse Floral was destroyed for humane consideration; and, (2) whether the insurance company acted arbitrarily in refusing to consent to the destruction of the horse Floral.

Appellee contends primarily that the coverage granted by the policy and the exception from liability contravene neither statutory enactment nor public policy; that the words are simple words without ambiguity and must be given their plain, ordinary and usual meaning, and that it is the duty of the Court to enforce the contract as written. Consequently, that since the contract unequivocally required prior consent of appellee for the destruction of Floral and such consent was not granted, but, to the contrary, was specifically denied, there can be no recovery. Under appellee's view, the right to grant or to deny consent for the destruction of Floral was absolute and the exercise of this discretion can not be successfully attacked. The trial Court

apparently accepted this theory in directing a verdict for the appellee.

 Under the facts of this case, we find it unnecessary to pursue to the ultimate the construction, theories and contentions of the parties as to the possible extent of liability which might be enforced under the terms of the insurance contract here involved. We are not now prepared to, and do not, hold that under the terms of the policy the right of the insurer to refuse to grant consent to the voluntary destruction of an animal for humane reasons is so absolute that any and all judicial inquiry into the grounds for refusal is precluded without regard to the circumstances surrounding the failure to give consent. In this case it is not necessary that we do so. On the other hand, we can not uphold the contention of the appellant which implies that a dispute as to the existence of humane consideration for the voluntary destruction of an animal affords a proper basis for a finding of fact and law that a refusal to grant consent is arbitrary or unreasonable. To plainly rule this feature, we remark that we find in the language of the policy no basis for holding that the insurer subjected itself to liability in case a jury should find it made a mistake in judgment in evaluating and determining "humane consideration." The existence of such consideration necessarily involves to a high degree the exercise of judgment upon a matter as to which reasonable minds might well differ.

The grounds for differences of opinion as to the ultimate extent of defense which the language of the contract may afford the insurer need not be discussed, for we are agreed that, regardless of these, the evidence in this case would not authorize a recovery even under the plaintiff's theory of liability. The facts of the case would not authorize a jury to hold that the insurer acted arbitrarily in withholding its consent. The insurer proceeded to investigate through its managing agent and disinterested veterinarians the extent of the injury to the horse. There was ground for, and the existence of, a *bona fide* dispute as to whether voluntary destruction of the horse was required by "humane considera-

tion." The horse continued in good flesh, with good appetite, and was not destroyed until 42 days after the injury and 22 days after refusal of the insurer to grant consent to such destruction, at a time less than one week prior to the expiration of the policy. The evidence in the case would not have supported a finding for the plaintiff by the jury, and, therefore, even if the reason which induced the direction of the verdict in favor of the defendant by the trial Court should be held improper, the result thereby reached was nevertheless correct, and no reason appears for setting aside the judgment entered thereon.

Judgment affirmed.